Case number 10-2826, consolidated with 10-2827, in re the Marriage of Johnson. All right, Mr. Adams. Okay. All right.  Yeah, I think so. Do you want to say a little bit more? I think I'll air dry. I think I'll be okay. Okay. May it please the Court, again, my name is David Adams. on behalf of the appellants, Art Berman and Dan Meenan. This is an important case that the Court is handling today. It deals with the power of the circuit court to sanction an individual and will hopefully serve to define the contours of that power and where it rubs up against the concerns of due process. I know the Court has reviewed the briefs and the records, and so I guess my task here is to emphasize a few points here that I think deserve stressing. Initially, I'd like to talk a little bit about the waiver argument that was raised by Eric Johnson in his brief. He argued both waiver of the due process argument as well as the uncleans hand argument that were raised by the appellants. The waiver doctrine, as this Court is surely aware, states that if a party does not raise an issue at trial, he cannot later raise it on appeal. Ironically, Eric's waiver argument really only serves to underscore the efficacy of the appellant's due process argument. Here, the appellants were never given the opportunity at a trial of their own actions to raise this issue. Indeed, the very nature of the due process argument being raised here, that the appellants did not receive a hearing of their own, precludes such a raising of the waiver issue and hence an application of the waiver doctrine itself. In essence, how can someone argue that someone waived an issue at their trial when they didn't even get that trial to begin with? Next, I would like to talk a little bit about the argument that the sort of fallback position to the waiver argument that was raised by Eric, which is that he had urged that it was incumbent upon the appellants here to file a motion to reconsider. And I think, first of all, as I noted, the case law states that there is no requirement  But I think equally important is that further, such a motion might have required or surely would have required the appellants to have taken a position or positions that were in opposite to that which they had just presented on behalf of their client Pam in the underlying sanction of her. And so I think that that's another reason why it's particularly, well, why it's not a fair argument to assert that they should have filed some sort of a motion for reconsideration here. Then the next argument I'd like to talk about is that which Eric made, that due process was not violated here because in making that argument, he stresses and he talks about these cases which stand for the principle that a trial court can sua sponte sanction a litigant or a lawyer under Rule 137. And I just want to make this clear. The appellants here take no issue or take no quarrel with that established rule. However, but that's not the issue here as to whether the court should. The issue is whether the two lawyers should have had a hearing on whether or not  Exactly, Judge. Rather than just being sort of surprise sanctioned here without notice, which is what occurred, as noted, as I noted in the briefs, this surprise denied them the opportunity. Speaking of surprises. Okay. There are cases that neither of you have talked about that actually deal with 137 and whether or not when you're sanctioned under that particular rule, whether the party's entitled to a hearing. There are cases. You know, I know you have this constitutional due process issue, but there are actually cases from many of the districts saying that you're entitled to an evidentiary hearing if the judge is going to sanction you under Rule 137. Oh, well, so much the better. Thank you. But, you know, no one has cited them. And there's the Baker case. I'll refer these to you and your opposing counsel. The 242 Illap III, 684. That's the third district. Okay. And that relied on Smith, another third district case. That's 201 Illap III from 1990, referring to the requirement of a hearing, an evidentiary hearing. And then there's Berg v. MidAmerica. That's 293 Illap III. That's a first district case, 5th Division. That's from 97. Then there's cases going back to 89, Baino v. McNew. That was interpreting the precursor of 137, that being 2611. Okay. That says the same thing, that you're entitled to an evidentiary hearing. So I suppose it's really, you know, something your opponent should respond to, but your complaint is there was no evidentiary hearing. They were sanctioned. Now, what about this idea that the judge made very specific findings about the conduct of the attorneys being attributable, that her conduct was attributable to them? Well, again, I think that when I review that order, the order which is the February 2009 order, again, it really speaks. The judge in that order speaks at great length about PAM, that is the client's conduct here. And then she sort of attributes that in one paragraph there in a sentence or two. And I guess that's a big part of the problem here. But in the pleading that's the subject of this whole thing, she apparently reviewed an article that said there was, you know, going to be this possible sale. And then in her pleadings that the lawyers filed, she said before 2006, she had no knowledge of any possible deal. And the court, this trial judge, found that that was clearly a false pleading because she had reviewed something about it. And had discussed it, sent it to her lawyers, and discussed it with her lawyers. That day. Correct. And I guess there's two points I would bring up in response to that. First, and I would refer to page 27 of our opening brief, you have a copy of the entire Cincinnati Post article. And in that article I bolded one sentence in particular. And if I may read from it, it states, the article, first it begins, it gives some sort of talks about smuckers having the jelly company. Yeah, we've read the Google article. It's in the brief. Right. Okay. Well, I guess the point that I'm stressing here is that the disagreement that we have with the trial court is that, first of all, you can take from that paragraph that I bolded in there and say that that put her and the attorneys here on notice that there was some sort of deal certain that had been struck here. And another part of the thing, and one part of the problem that I, and the second part of the problem, and I guess that's the essential question is whether this put her on notice here. And we've argued that it hasn't. And, again, that's contained in the brief. But isn't that the court's position, trial court's position, that it's belied by her statement that it wasn't until two years later that she became aware of this? And then for purposes of a 1401, that neither she nor the lawyers apparently did any further research to ascertain whether this, according to the Cincinnati Post, projected sale that was to close by the end of the year ever came to fruition during the period of time between that Cincinnati Post article and the time that the 214.01 petition was filed. Well, I guess, and that takes me into the next point. Again, what you have to do is you have to look at this article here against the backdrop of the other allegations which deal with the misconduct that Eric was guilty of. Here you have a situation where he's ---- But how would that have absolved them from at least checking, the duty to at least check on what occurred sometime during the interim? I mean, I understand your argument that if you were to subpoena information from these lending institutions, that that might have an adverse impact on the financial viability of the enterprise. But it certainly wouldn't have done so to see what was in public domain or to ask for further information from the opposing attorneys saying, we understand that you don't want us to subpoena documents from the lending institutions. However, this article raises questions in our mind. And as a result of that, I want to see documentation regarding this deal. Well, it's my understanding that they repeatedly sought information so that Mr. Gould, who was their hired expert, who was working with the person who represented Eric, would have this information. They requested repeatedly updated information. They kept running into roadblocks. And then at one point, if I recall correctly, the judge had actually had to order Eric and his company to actually cooperate with them on this. So I think that they were obstructed in a lot of ways here that made that a very difficult problem. And then again, you've got to set that off against the back, as I said earlier, against the backdrop of what was going on here with this. Don't go poking around in the hornet's nest. You're going to sour everything for everybody. If I lose, you're going to lose. We're all going to go down together. My point is you could stay away from the hornet's nest and still do your diligence. Well, again, it's my understanding that they were obstructed every time that they tried to engage in this. I don't know where that understanding comes from. I didn't see any discussion of that. Page 26 of your brief, you refer to the 1401 petition. And you mentioned the date that she first learned of this deal, the Cincinnati Post article, rather, on December 1st of 06. Is that a typo? Because clearly she learned about it on December 1st of 04. Yes, sir. Thank you for pointing that out. I think that's a reply then in the blue brief. They say, look, they're still saying they never got it. No, no, no. She was aware of the article on 12-104. No, no, sir. And that made a strategic decision, clearly, not to seek further discovery on it, right? I mean, you say the strategic decision was based on bad representations or the fact that her husband was handballing her. That's a fair statement. Not telling her. That's a strategic decision made by her and her attorneys together to not seek any further information on the possible acquiring, acquisition of the Smucker's division. Correct. Based upon those circumstances that were present there at that time. Yes, sir. Okay. But isn't that what this was? The 137 is a pleading. The reason the judge found it was based on the pleadings in the Post Decree, or the 1401, rather, where they said, well, she didn't know about it. She knew about it, and the attorneys who filed the 1401 knew about it. Well. On what could be more plain that they knew about it. Well, again, I guess this all goes back to whether this actually put them on notice, this article. And the judge believed it did. I think all that it speaks to is that there's some sort of a possibility here. Well, when we look at an insurance policy or anything, when we look at the 1401 petition, the allegations in that regarding what she knew or didn't know about the acquisition of the Smucker's division compared to what she said in her second deposition, which was I knew about it, I saw an article on it because I was smart enough to Google these things, and I didn't know about it. Well, what else would need to be done? Well, again, I think that at the point where, again, we have to look here at what the attorneys did here. And the question that, and the point that you raised is at the deposition, after the 21401 petition was filed, these other facts, she testified as she did during the discovery depositions. And so when you're looking, I think part of the problem, or one of the problems of what the trial court did here is they looked at that and then looked in hindsight at what these attorneys did when the attorneys didn't have that deposition in front of them when they created this 21401, but yet now they're being faulted for what occurred. But in the 1401, they filed a pleading which they had to know was false. They're the ones who received this information themselves. On 12-104, they get notified, as Justice Epstein has already pointed out, about this article. So they have it. And that's where the testimony is. I gave it to my attorneys on the same day. So there's no question what they knew about it on 12-104. And yet then in 06 or 07, they filed a 1401 and said, We never knew about this. It's patently false, is it not? Well, again, the issue goes to whether you think this put them on notice or not. And, again, I would – So let's assume that, agreeing with you and Justice McBride, we should send this back for an evidentiary hearing of some kind regarding this. So sending it back for that hearing, we'll have the 21401 petition saying, I never heard about the acquisition of Smucker's. You'll have her second deposition saying, Oh, I knew about that from 12-104, and I gave it to my attorneys on 12-104. What else is possible out there? What are we seeking in this evidentiary hearing? What can your clients say that say, Oh, I didn't know about it, when clearly they did know about it? Well, I guess the argument would then turn upon whether they believed, you know, whether they objectively believed that this put this on notice, and then whether their actions in drafting that 21401 petition were objectively unreasonable in drafting that petition. And that would be what would be at issue there, not looking at things through the lens – – of what occurred afterwards in these depositions. But isn't that exactly what 1401s do, right? I mean, why do you find a 1401? Well, because I was Smucker two years ago. I didn't know about this. Okay, the deposer, they actually do discovery. They do due diligence. They ask the lady, I didn't know about it. My lawyers knew about it. I sent it to them myself. We discussed it. What else is left? What are we missing? Well, again, I think what we're missing here is – – may I ask, in her deposition, other than saying that she did acknowledge that she saw this Google article, her position was that it really doesn't say that there's, in fact, a sale that's going to occur, but that there's a deal brewing. Now, is there anything in the record other than her statement, and I forwarded that to my attorneys at the time, is there any other discussion about what they said? I don't even understand how that could be the subject of her deposition, her conversation she had with her lawyers. So what is in this record about what they knew? Is there anything? No, she said, I faxed it to them, or I sent it to them that day. Correct. Okay, is there anything else that says what their knowledge was after she sent it to them? I don't believe so, no. Okay, all right. So there is something left here. I mean, I don't really know how – I don't know how the lawyers are going to get into these attorney-client conversations anyway, but I don't know, it's kind of beside the point. Is the most that's on the record her statement that she sent this article to them and they discussed it? That's my understanding, yes. Okay, all right. But at the same time, the ex-husband was saying if so-and-so gets wind of this, then, you know, everything is going to be destroyed. The whole thing, the bank, the Northern Trust, the bank, everything is going to collapse. So she agreed to whatever she got at the time. Was it three or six or a million? What was it? It was a couple million bucks. So she agreed to that and they never went into this possibility of a sale at all? No. Okay, all right. Anything else? No, I think actually within the context of answering your questions, I covered a lot of the points. It's funny how that works out. It is. And appellate court justices are always inscrutable, and so you don't know where they're going with the things. Some of us are rather scrutable. Oh, okay. Well, I think I'll allow my learned opposing counsel here to take the podium. Thank you. Thank you. Good afternoon again, Justices. Good afternoon. First, with respect to this due process issue, as I indicated, besides the fact that it was waived, it was never raised in the trial court. Well, wait, could I ask you, Mr. Feinstein? Yes. What happened in this case was there was summary judgment granted to Mr. Johnson on the 1401. Yes. And then Mr. Johnson filed this petition for sanctions. Correct. And filed it solely against his ex-wife. Correct. And then the court heard, did the court take this on all of the documents that were filed, the motion for sanctions, the response, and the reply? There was also an argument, which the court referenced in its order, which is in the appendix, which is in the first sentence. So there was an argument. Unfortunately, the appellants did not furnish the transcript from that argument. Okay. But either way, the judge then issued an order and sanctioned Pamela Johnson and at the same time sanctioned the attorneys for $56,000. No, Justice. That's not what happened. This was a two-stage procedure. I want to make that clear. Oh, I'm sorry. I misspoke. I misspoke. I take that back. She entered an order finding that the conduct was sanctionable against Mrs. Johnson and the attorneys, and then she said it's time for an evidentiary hearing on the amount of the sanction, and then there was an evidentiary hearing. Exactly. She found it was undisputed that she knew and they knew or should have known. How can they object to being sanctioned, not the amount, how can they object to being sanctioned when there was no petition to sanction them? Well, or even a statement of the court sua sponte beforehand that I am also going to be considering. I understand your argument that if a court wanted to, it could sua sponte have a hearing on sanctioning attorneys, but here there wasn't even a statement that this is what I'm considering doing. Right. The sua sponte authorization is in the rule. There's no transcript, again, from that argument, but all the same. But the rule stating that a court may sua sponte means that the court can sanction. It doesn't need a motion from an attorney, but the rule does not state that the court can sua sponte, sanction someone without an evidentiary hearing. Summarily, it doesn't say, you know, it says what it says about on its own initiative. Now, to answer Justice McBride's question, which came out halfway, when would they have had an opportunity? Yes. Admittedly, up until that time when the, I think it was February 09 order, when they were first mentioned, I would say they would not have had the opportunity as, again, although we did have a request for such other and further relief, we didn't specify Mr. Berman, Mr. Meenan. But where I differ with Mr. Adams is he's saying, well, we shouldn't have had to file a motion to reconsider. A solid year took place between that order that we just discussed in 09 and the beginning of a four-day evidentiary hearing, February 2010. So you're saying that the passage of time means that they forfeited or waived any right to a hearing? I'm saying that they had an opportunity. They had a year in which to request it before the case went final. Remember, that first order was an interlocutory order. It wasn't a situation where you have a trial, you have a judgment, and then there's the whole issue of whether or not you can or have to file a post-trial motion, as counsel mentioned. They could have filed, as we said, what we call a Chemner motion, a Towns motion. They could have raised it all that time. Yes, all right. Now, there are multiple cases that neither of you two have addressed that say that when a court is going to enter sanctions, that an evidentiary hearing is required. If I may, Justice. All right. Baker. Right. Burke. You mentioned. We've got Henry Smith. And Bino, you mentioned. Yes, Bino. That's one of the older ones. Bino is cited in my brief, actually. Yes. So are. And what does Bino say? So are the cases. That had to do with. But what does it say about an evidentiary hearing? Well, I do not. I'm sorry. I do not have the case with me. All right. I don't recall whether it requires an evidentiary hearing. My understanding is that under Rule 137, Justice, it's not necessarily an evidentiary hearing in all cases because sometimes. Well, actually it is. It's. Since the rule. Since 137 has been interpreted, not the precursor. Yes.  216 was in this. 2611. 2611, excuse me. The Bino case talks about 2611. But Baker, Burke, and Smith are all post-2611. They're all about 137. And they all say that in order to sanction an attorney or a litigant for conduct that's sanctionable, an evidentiary hearing must be held. So what do we do with that? In terms of what? Well, I don't know what evidence would have been produced. They also, if that is the case, Justice. Think about it, though. They were representing Mrs. Johnson at her hearing or the proceeding to determine whether her conduct was sanctionable. Now, should they be representing her when their own conduct is subject to a sanction? I mean, isn't that a little bit unfair? But the question is, Justice, well, fairness is what we're talking about in due process, which is flexible. Now, if they came in and said in their brief, well, we had this argument that we wanted to raise or we could have raised, but we were precluded from doing so, that might have been one thing. But I think what's very significant here in all their briefing, their arguments are still exactly the same ones that they made before the trial court in their 20-page response. If they don't have an evidentiary hearing, that would constitute a record that would allow them to go beyond what was produced in the writing to say, but there's a difference between our former client's knowledge and our knowledge, if that indeed occurs. Now, Justice Quinn's questions are significant questions, but without the opportunity for an evidentiary hearing, aren't we really just speculating on what they might be saying? Well, one point is that even if there's a right to an evidentiary hearing, and of course, Justice, as you pointed out, they didn't raise this on appeal even. No, they raised it. It could be waived. They raised the due process argument. Right, but they didn't say we're entitled to an evidentiary hearing, and they never raised that even on Ms. Johnson's behalf. Wait a minute. What does the due process notice and hearing mean? They did raise this. Not under 137. They said they were entitled to notice and hearing. It's not an evidentiary hearing necessarily. Justice, if I could finish what I was going to say about those cases. I have also cited in my brief, there's a First District case called Riverdale Bank v. Papastrakatos, excuse me for the pronunciation, a First District case from 1994. It's on page 28 of my brief, indicating whether a hearing must be held depends on the circumstances in each case. In which case? Is that interpreting 137? It is, I believe so, because they also state that the only difference between all of them. What's that citation? It's in your brief? It's on page 28. Yeah. What's the name of it? Riverdale Bank v. Papastrakatos, and it talks about the difference between the prior rule and Rule 137. So 137 was clearly there, and again, Justice, had I known from the briefs this was an issue, I could have had all those cases out. Well, you know, the parties are required under the Supreme Court rules to alert this Court of any authority that any authority that defeats or suggests that your position is incorrect. Understood. Both of you. But if I may cite the other case that was in the brief on this issue was Edward Yavitz I Center v. Allen. That's a Second District case from 1993 talking about Rule 137, and it was held there that it says generally, Justice, generally the Court should hold a hearing, it doesn't say evidentiary, both on the merits and the claimed amount of recovery unless the relevant issues may be resolved by an examination of the record as it already stands. That's what Judge Kennedy did. Was there any hearing here? There was, but again, they didn't provide that. What I mean for the lawyers who are representing their clients, and they're going to be sanctioned while they're representing, don't they have the right to have someone represent them or withdraw from representing her? Isn't there a clear conflict going on? They're representing a woman who has a motion for sanctions pending against her, and there's no conflict with them representing her when they're going to be the subject of sanctions that the Court decides she's going to find at that juncture? It would be one thing if they were on notice that there was a possibility of the sanctions and they would make the determination that there is absolutely no conflict because there's no difference between the knowledge that they had and the knowledge that their client had. But without the notice that they were being, sanctions could be imposed on them, they never had the opportunity to make the judgment about whether there was a conflict or to defend themselves in the context of it because they had no idea that they were the subject of it. Except that the rule allows the Court to do it on its own, not restricted to the pleading, and they filed a frivolous lawsuit. I believe that I agree. Taking the sua sponte part is being absolutely black letter law. In this case, the judge didn't do it sua sponte. You raised the issue in a motion seeking sanctions, not against them, but putting them actually on notice. You weren't seeking money from them. You were seeking money, rather, from Mrs. Johnson. The first time, as you mentioned in this oral argument a few minutes ago, that Mrs. Johnson's attorneys knew that they would have to defend themselves was after the trial court found them to have violated Rule 137. Isn't that right? Well, in terms of what the judge did. What I also just stated is that they were on notice of the rule. They were on notice after the fact. But, gosh, what else could they have done, which is what I'm asking. What else would they miss out on? That's really not much of an argument, frankly. And the fact they could have had a year then before the issue of the money was entered to come in and file a motion to reconsider or defend themselves in some manner or form that would be satisfactory to you. I mean, as Justice Epstein was just pointing out, isn't the first thing with due process some notice? And here the only notice is from you that you're suing her client. You want money from her client. They had an opportunity to raise that at any point after that. So after they were found guilty, they could have said, by the way, now that you're found guilty, I can raise, I disagree with you. But I also, Justice Quinn, as you said, what would it, you both stated, what would this consist of? If you were to remand for a hearing, evidentiary or otherwise. I'm not going to take the position that they don't have any defense here. I'm not going to say that. What I want to ask you is, other than the article, what do you have that shows anything? If they got the article, all the article says is that there may be a sale. How does that translate to what the attorney's knowledge is or should have been? I don't get it. Okay. First of all. Mrs. Johnson is one thing. But what about the lawyers? They get a copy of a newspaper article, and now you're saying that that means that by filing the 214-01, that is objectively unreasonable? When they file a 214-01 where the allegations are that she had no knowledge until 2006, and they're holding the piece of paper, the smoking gun, as it were, that she gave them that disproves that manifestly, in addition to the other Google articles. The court struck those. The court struck those. They're not in this record. We're not going to consider them. The article in Google says nothing more than that Smucker's is going to try to sell its food processing division to the company here in Chicago. Right. And the terms were not disclosed for the deal, which is expected to close by the end of the year. This is November 30, 2004. I don't know how we get from that to attorneys, you're being sanctioned, and we'll talk about the fees, how much it's going to be later. Which they had the opportunity at that time to say our sanctions should be zero or should be $1. There's no case that you've cited, and you haven't responded to the notion that they don't have to file a motion to reconsider a sanction order in order to appeal that. I believe that if they want to raise a constitutional claim in this court, that they should raise it before the trial court, who would then have the opportunity to give them whatever address the trial court had she known had that been raised. And that's the whole waiver point. That we're getting to the Constitution and due process and notice and all that. It's wonderful. I don't know if we're going to be deciding this on any constitutional issue when there's 15 cases out there that talk about what's supposed to happen with a 137 sanction. Generally speaking, you have an evidentiary hearing. Certainly in this case where the lawyers were not notified that they were going to be sanctioned is different than a motion filed against Ms. Johnson. There is a little bit of a difference here. But the arguments they've raised are exactly the same. They've had full opportunity to do that. All right. So you're saying the result would be the same, no harm, no fault. The result would be no prejudice, which is the important cornerstone of due process. None of the cases that involve 137 discuss prejudice. They discuss the notion that if you're going to sanction someone, at least give them a hearing. That's all. That's what they say. The lawyers are not Mrs. Johnson. And we don't really know on this record. You're right. The cases say that if the record discloses sanctionable conduct, perhaps there's no need for an evidentiary hearing. But what we have here is a statement in her deposition that she did have wind of an article and she forwarded that article to her attorneys. I don't know how we go from that to attorneys, you're sanctioned. Because the court also determined that both she and the attorneys, first of all, knew based on this article and should have known based on the articles. If I may, Justice, you said Judge Kennedy struck those other Google articles. They are part of the record in the paperwork. We've all seen them. This court can affirm on any basis, including the fact that whether or not Judge Kennedy thought it was important, it's still a function of should have known. 214.01 requires, you know, I didn't know and I couldn't have known with the exercise of reasonable diligence. And that's where those other articles are important because she complains about, or they complain now about the Cincinnati Post article being a vague rumor, even though they initially said she had no information, which obviously wasn't true. Those other articles and the SEC website that I indicated that Mr. Berman, Mr. Meenan could have pulled up as well, already said it was a done deal. They signed an asset purchase agreement. They didn't have to rattle any pages. It's just all on the web. Mr. Feinstein, isn't all of that argument demonstrative of the fact that there is something to be determined at a hearing about what these lawyers knew, what they didn't know, when they knew it, and what they could have done in the exercise of due diligence before filing this 1401 motion, and what information was just in the purview of their client? And whether the statement that was contained in the filing was something that they were given notice by their client of the existence of this that would have shown that the statement in there that there was no notice until 2006 had to be wrong. I mean, I don't want to anticipate what the arguments would be and the evidence would be at the hearing once the hearing is held, but you're basically saying that there is nothing that can possibly be produced at the hearing that could impact on the liability of the lawyers as opposed to the liability of the list. The argument that they made in the response was this is a vague rumor. We discounted it, even though she went ahead and she directed them not to do anything else. Do you think we would have entertained any statement outside the record about what they knew from their client? When there's nothing below that includes it in the record? Of course not, because you would have had the opportunity to cross-examine and confront that evidence at a hearing. Again, there was a hearing. We don't have it in the record, which is the appellant's burden. It's just an argument, though, right? Well, it's an argument. And we were deprived of the court's theories, assuming the court made some findings, which actually, of course, are required, correct? But they're not arguing the case should be reversed for the court's failure to make specific findings, because they could make that argument. They'd be fouched. No, they didn't foul it. Well, they want to have their hearing. And the hearing you're talking about was the argument limited to whether the client should be sanctioned, because that was all that was known by the lawyers at the time that that argument was held. You had not amended your pleadings to say that, by the way, we're also seeking to sanction the attorneys. And the judge at that point had not given any indication that she was considering sanctioning the attorneys. For all anybody who was responding to it knew at that particular point in time, this was whether or not the litigant, the party, would be sanctioned. Other than the notice that's contained in the rule, which we have. One other point about this diligence, Justice, is that I'd like to get the opportunity to get out, is that, as we pointed out, and the appellants have not disagreed with this specifically, even this deal was irrelevant, in other words, the purchase, under the settlement that was reached, because the appraisal that was the reliance, the basis for reliance for the deal, was December 31st, 2003. And as we've set out, it's very clear in the record that subsequent events, such as may have happened, wouldn't have affected the value of 2003. Knowing, you know, this article and whatever other articles were available, if they had wanted to not do the deal and reappraise the business, they could have done that. They went ahead. She took the money. She directed them not to do anything else after, you know, they all had this. And so, again, it's another reason for the frivolousness of the 1401. I agree with the counsel, Justices, this is a very important case. Rule 137 serves a crucial public policy. Violations need to be seriously dealt with, which the trial court properly did. I don't think there's any issue. As the amount of the sanction was not appealed, the trial judge found that Mr. Johnson was damaged, that his damages were $112,000, and that he should be made whole. I believe that the, as stated, the trial court, by having the two separate hearings, giving the appellants a full opportunity over a number of months, a year, to raise any issue in the trial court, particularly with, as I've stated under the case law, I don't believe there is an absolute right to an evidentiary hearing in each 1401 case. I believe that this new process issue was not raised in a timely fashion, consistent with the recent case of People v. White, which I filed a motion to cite authority. Which we've allowed. Thank you. Appreciate that. Again, the courts were cautioned not to be free rangers and judicial restraint with respect to constitutional issues. Unless the court has any other questions, I would ask that the trial court be affirmed and that we be awarded fees to defend this appeal. Thank you, Mr. Feinstein. Any final words, Mr. Adams? No, Your Honor. I have no final words other than to ask in closing that the appellate, that this court reverse the trial court's decision. And thank you for your time today and for consideration of this issue. Did you hear that last comment, though? He's asking for fees. Did you hear that? Is that in your brief? Yeah, is that in it? Yes. Okay. Thank you very much. Okay, thank you. We'll take the matter under advisement. We thank the lawyers for the presentation. Thank you.